UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA ALLIANCE OF CHILD AND
FAMILY SERVICES,

            Plaintiff,

  v.

CLIFF ALLENBY and MARY AULT,

            Defendants.

            No. C 06-04095 MHP

            **MEMORANDUM & ORDER**

On June 30, 2006 plaintiff California Alliance of Child and Family Services ("California Alliance") filed a complaint against Cliff Allenby, Interim Director of the California Department of Social Services ("DSS"), in his official capacity and Mary Ault, Deputy Director of the Children and Family Services Division of DSS ("CFS"), in her official capacity, alleging that defendants violated the foster care provider reimbursement provisions of the Child Welfare Act ("CWA"), 42 U.S.C. §§ 670-679b. Now before the court is defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

BACKGROUND[1]

Plaintiff California Alliance is a non-profit organization that represents the interests of group homes that provide for the care and supervision of foster children. California Alliance includes approximately 150 non-profit agencies that provide foster care services, 130 of which operate one or more group homes. Defendant Allenby, as the Interim Director of the California Department of Social Services, is responsible for the administration of the CWA as it relates to programs provided

in California. Allenby's responsibilities include implementing the state plans approved under the CWA and assuring DSS's compliance with relevant state and federal law. Defendant Ault is the Deputy Director of CFS and is also responsible for implementing policies contained in the California state plan.

Plaintiff seeks declaratory and injunctive relief to enforce the foster care provider reimbursement provisions of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670-679b (1994 & Supp. V. 1999), also known as Title IV-E of the Social Security Act. Under its Spending Clause powers, Congress enacted the CWA, which creates a joint federal-state program that provides federal monies to participating states for certain costs of administering the foster care system. The CWA authorizes the allocation of funds to states that comply with certain requirements of the Act. States must submit a plan for assistance to the Department of Health and Human Services for approval. 42 U.S.C. § 671(a). Among other requirements, the CWA provides that participating states provide "foster care maintenance payments" on behalf of eligible children to foster care providers. 42 U.S.C. §§ 617(a)(2), 672(b)(2). Section 675(4)(A) of the Act enumerates the costs to be included in foster care maintenance payments:

> the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation. In the case of institutional care, such term shall include the reasonable costs of administration and operation of such institution as are necessarily required to provide the terms described in the preceding sentence.

Pursuant to the CWA, California has designated DSS as the agency for implementing the state plan approved by the Department of Health and Human Services. DSS receives the federal funds for the foster care maintenance payments and distributes payments to foster care providers. Since it was implemented by state statute, 1989 Cal. Stat. Ch. 1294, the RCL system has determined the payment rates for foster care group homes. See Cal. Wel. & Inst. Code § 11462. The RCL system assigns each group home to one of fourteen levels based on a number of points. The system assigns points based on the number of paid/awake hours worked per child per month and the qualifications of the staff. The homes at each level receive the same payment rate based on a standardized rate

2

schedule. Cal. Wel. & Inst. Code § 11462(f).

Plaintiff contends that the RCL system violates the foster care maintenance requirements of the CWA, 42 U.S.C. §§ 671(a)(2), 672(b)(2), 675(4). It further contends that under the RCL system foster care rates have increased by only 26% while the increase in costs incurred by group homes has exceeded 26%. Compl. ¶ 19. Because the foster care maintenance payments are insufficient to cover costs, plaintiff alleges that several of its members have ceased operating their group homes or reduced their capacity. In an effort to compel the DSS to comply with the relevant provisions of the CWA, plaintiff brought this action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.

On August 25, 2006 defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The crux of the current dispute between the parties is whether the CWA confers a individual right of enforcement upon plaintiff for foster care maintence payments. Defendants assert in their motion to dismiss that because the CWA does not confer such a right upon California Alliance in accordance with the three-prong Blessing test, its claims must fail. In response, plaintiff contends that the disputed provisions of the CWA evince Congress's unambiguous intent to confer an individual right upon foster care providers.

LEGAL STANDARD

A motion to dismiss will be denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco, 792 F.2d 1432, 1435 (9th Cir. 1986), cert. denied, 479 U.S. 1064 (1987). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness

3

1  Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

3  DISCUSSION

4        Defendants argue that plaintiff has failed to demonstrate that it has a private right of action under 42 U.S.C. § 1983 to enforce the provisions of the Child Welfare Act at issue. Plaintiff must show that it has a right to the establishment of rates under Title IV-E of the Social Security Act. To establish that it has such a right, plaintiff must satisfy the three-part test set out in Blessing v. Freestone, 520 U.S. 329 (1997) and refined in Gonzaga v. Doe, 536 U.S. 273 (2002). First, plaintiff must demonstrate that Congress "unambiguously conferred [a] right to support a cause of action brought under § 1983." Gonzaga, 526 U.S. at 283. Second, it must also show that the right is not so "vague and amorphous that its enforcement would strain judicial competence." Blessing, 529 U.S. at 341 (citation omitted). Finally, the asserted right must be framed in mandatory rather than precatory terms. Id.

      The Gonzaga court clarified that the first Blessing factor sets a high bar. It requires clear Congressional intent of an unambiguous grant of private right of enforcement. Gonzaga, 536 U.S. at 283. While there are no magic words Congress must use, the Supreme Court has pointed to examples of statutes with explicit rights-creating language. These statutes have an *"unmistakable focus* on the benefitted class" and are phrased in "explicit rights-creating terms." Id. at 284. The most frequently cited examples are the language in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and Title IX of the Education of Amendments of 1972, 20 U.S.C. § 1681(a), both of which mandate that "[n]o person . . . shall . . . be subject to discrimination." See Gonzaga, 536 U.S. at 284 (relying on both provisions as containing rights-creating language); ASW v. Oregon, 424 F.3d 970, 976 (9th Cir. 2005) (comparing the language in these statutes to language in section 673(a)(3) of the CWA). In the instant case, plaintiff claims a right to enforcement of a monetary entitlement conferred by the CWA and not a prohibition on conduct or discrimination.

      In conferring rights to enforcement, Congressional intent is expressed in different ways when guaranteeing entitlements than when proscribing conduct. In two cases considering the enforcement

4

1    of specific monetary entitlements, the Court looked to whether Congress required the payment of an

2    objective monetary entitlement and whether there was a sufficient administrative mechanism for

3    enforcing states' compliance. Gonzaga, 536 U.S. at 280 (discussing Wilder v. Virginia Hospital

4    Ass'n, 496 U.S. 498 (1990) and Wright v. Roanoke Redev. and Housing Auth., 479 U.S. 418

5    (1987)).[2] Here, the CWA provides objective criteria for foster care maintenance payments. Section

6    675(4)(A) enumerates the costs to be included in the foster care maintenance payments:

> the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation. In the case of institutional care, such term shall include the reasonable costs of administration and operation of such institution as are necessarily required to provide the terms described in the preceding sentence. 42 U.S.C. § 675(4)(A).

11   This list provides specific costs to be reimbursed; it is a far cry from language, such as that requiring

12   "substantial compliance," that would suggest that Congress intended only to provide a "yardstick"

13   for measuring systemwide performance. Blessing, 520 U.S. at 343. In rejecting claims to

14   enforcement of general provisions of Title IV-D of the Social Security Act, the Blessing Court did

15   not foreclose the possibility that other provisions, like those at issue in this case, give rise to

16   individual rights. Id. at 345. As an example of one provision that might confer individual rights, the

17   Court suggested that if one of the Blessing plaintiffs had brought a claim against the state for failure

18   to pay a portion of child support payments owed to her, Title IV-D might "give her a federal right to

19   receive" the monies. Id. at 345–46. Similarly, when considering a provision that enumerated the

20   monetary benefits to which persons were entitled under the Housing and Community Development

21   Act, the Ninth Circuit concluded that an analogous provision evinced a clear Congressional intent to

22   confer individual rights. Price v. City of Stockton, 390 F.3d 1105, 1112 (9th Cir. 2004) (analyzing

23   Section 104(k), which provided for "reimbursement for actual and reasonable moving expenses,

24   security deposit, credit checks and other moving-related expenses, including any interim living

25   costs"). The list of costs presented in section 675(4)(A) is of the same type of specific, objective

26   monetary entitlement as that in Price.

27          Defendants' reliance on Sanchez v. Johnson, 416 F.3d 1051 (9th Cir. 2005) to support the

28

5

contrary position is unpersuasive. That case dealt with section 30(A) of the Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A), a provision of a strikingly different level of generality from the one facing the court here.  Section 30(A) requires states to provide "methods and procedures relating to the utilization of, and the payment for, care and services available under the plan."  The list of costs outlined in CWA goes beyond the requirement of methods and procedures for payments; it requires states to reimburse providers for specific, enumerated costs and is more akin to the spending provisions analyzed in Wilder and Wright.

Section 675(4)(A)'s list of costs to be reimbursed is directed toward the individual foster care providers.  Defendants argue that the purposes of the CWA are aimed at the children in the foster care system and, therefore, that any rights created by the CWA are the rights of the children and not the providers.  The court disagrees.  Congress's declaration of the statutory purpose mentions both states and children as beneficiaries. 42 U.S.C. § 670.  However, this is not determinative.  The Ninth Circuit concluded that the CWA conferred individual rights on adoptive parents, who were similarly absent from the statute's purpose. ASW, 424 F.3d at 976; see also Wilder, 496 U.S. at 498 (concluding that the Medicaid statute confers monetary entitlements on institutional providers).  The foster care payments required by section 672(a) serve a similar function to the adoption assistance payments mandated by CWA section 671 in dispute in ASW: they provide for reimbursement of the costs incurred in providing foster care and adoption services to children.  Moreover, the CWA provisions are distinguishable from the statutory provisions at issue in Gonzaga.  In that case, the Court noted that the focus on the statutory provisions was "two steps removed from the interests" of the person claiming the individual right, 536 U.S. at 287.  In contrast, the CWA contemplates payments directly to providers, and the providers seek enforcement of that right.

Defendants also contend that plaintiff here, an association of providers, is doubly removed from the intended beneficiaries of the CWA.  Plaintiff association represents institutional providers in the state of California—the very entities to whom foster care maintenance payments are made. The association here is of the same type and nature as the Virginia Hospital Association which sought to vindicate the rights of the hospitals of Virginia in Wilder. 496 U.S. at 503; see also

1  Missouri Child Care Ass'n v. Cross, 294 F.3d 1034, 1036 (8th Cir. 2002) (upholding a similar
2  challenge to section 675(4) brought by an association of institutional foster care providers).
3  Defendants further argue that Congress's failure to provide for specific enforcement language for the
4  foster care maintenance payments evinces an intent that the provisions not be enforced through
5  actions brought under section 1983. Defendants point to the separate enforcement provision
6  provided in section 674(d) for enforcement of the CWA's anti-discrimination provision, section
7  671(a)(18). The mere fact that the CWA contains a reference for a remedy for discrimination does
8  not exclude evaluating other statutory provisions under Blessing and Gonzaga. The Congress
9  unambiguously conferred a right to reimbursement of the specific costs outlined in section
10 675(4)(A). The court finds that the first Blessing factor is satisfied.

11       The second factor addresses whether the CWA provisions at issue are so vague and
12 amorphous that they are not judicially enforceable. In a substantially similar challenge brought by a
13 trade association of foster care providers to Missouri's foster care reimbursement system, the district
14 court concluded that the costs enumerated in section 675(4)(A) were sufficiently defined to permit
15 judicial enforcement. "Payments [in section 675(4)(A)] are based either on itemized costs or
16 reasonable overhead, issues routinely entrusted to the judiciary in both statutory and common law
17 actions." Missouri Child Care Ass'n v. Martin, 241 F.Supp. 2d 1032, 1041 (W.D. Mo. 2003); see
18 also Wilder, 496 U.S. at 519–20 (determining that rate calculation pursuant to statutory guidelines is
19 enforceable by a court). Indeed, section 675(4)(a) contains an explicit and detailed provision for
20 determining payments to foster care providers. The second Blessing factor is, therefore, satisfied.

21       Finally, the language of disputed statutory provisions must be couched in mandatory terms.
22 Section 671(a)(1) states that "[i]n order for a State to be eligible for payments under this part [42
23 U.S.C. §§ 670 et seq.], it *shall* have a plan approved by the Secretary which provides for foster care
24 maintenance payments in accordance with [section 672]." (emphasis added) Section 672, in turn,
25 mandates that "each State with a plan approved under this part *shall* make foster care maintenance
26 payments on behalf of each [eligible] child" (emphasis added). Plaintiff argues that this provision
27 imposes an absolute duty on the State to make foster care maintenance payments similar to that
28

7

required by the language of Title IV, "No person shall . . . be subjected to discrimination." The court agrees. In clear language, the CWA requires states make foster care maintenance payments. Therefore, the third factor is satisfied.

Accordingly, the court concludes that CWA confers an individual right on plaintiff's members for enforcement of the foster care maintenance payments pursuant to section 675(4)(A).

CONCLUSION

For the foregoing reasons, the court hereby DENIES defendants' motion to dismiss for failure to state a claim.

IT IS SO ORDERED.

Dated:   Oct. 26, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

# ENDNOTES

1. Unless otherwise noted, the facts provided are taken from the Complaint.

2. Defendant's argument that a footnote in Justice Stevens' dissent in Gonzaga planted the seeds of a major reversal of the Court's position in Wilder and Wright is misguided. See Gonzaga, 563 U.S. at 300, n.8 (Stevens, J., dissenting). ("Indeed, endorsing such a framework *sub silentio* overrules cases such as Wright and Wilder. In those cases we concluded that the statutes at issue created rights enforceable under § 1983, but the statutes did not "clear[ly] and unambiguous[ly]," intend *enforceability under § 1983.*") (citation omitted). In his opinion for the majority, Justice Rehnquist made no intimations at overruling Wright or Wilder. By contrast, he discussed the two cases at great length and relied on them to distinguish cases which satisfy the Blessing factors from ones which do not. Gonzaga, 563 U.S. at 280–81. The Sanchez court characterized Justice Stevens' footnote as nothing more than a "suggestion" of the implications of the Gonzaga majority's reasoning; it decidedly did not interpret Gonzaga as overruling the two cases. Sanchez v. Johnson, 416 F.3d 1051, 1056, n.3 (9th Cir. 2005).